**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LAUREN WOLF, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>HAND & STONE FRANCHISE LLC, et al.,<br><br>Defendants. | Case No. 2:25-CV-05964-JHS<br><br>**<u>CLASS ACTION</u>**<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** |

## TABLE OF CONTENTS

I. INTRODUCTION ....... 1

II. BACKGROUND ....... 3

III. LEGAL STANDARD ....... 4

IV. ARGUMENT ....... 5

A. Hand & Stone Shared Its Users' Medical Information ....... 5

B. Plaintiff Has Article III Standing ....... 10

1. Plaintiff Alleges Concrete Harm Because She Did Not Receive the Benefit of Her Bargain ....... 11

2. Plaintiff Alleges Concrete Harm Through Disclosure of Sensitive Medical Information ....... 12

3. Plaintiff Alleges Immediate and Ongoing Tangible Harms ....... 14

C. All Of Plaintiff's Claims Are Adequately Pleaded ....... 15

1. Plaintiff's Wiretap Act Claim Is Well-Pleaded ....... 15

i. Plaintiff Adequately Alleges The "Content" Of Her Communications Was Intercepted ....... 15

ii. Plaintiff Has Adequately Alleged an "Interception" Occurred Because The Party Exception to the Wiretap Act Is Inapplicable ....... 18

2. Plaintiff's Unfair Trade Practices Claim Adequately Alleges Both Ascertainable Loss and Reliance ....... 22

i. Plaintiff Adequately Alleges Ascertainable Loss ....... 22

ii. Plaintiff Adequately Alleges Reliance ....... 24

3. Plaintiff's Common Law Claims Are Sufficiently Pleaded To Survive A Motion To Dismiss ....... 25

i. Plaintiff Plausibly Alleges Invasion of Privacy ....... 25

ii. Plaintiff States a Claim for Breach of Confidence ....... 27

iii. Negligence Is Sufficiently Pleaded ............................................. 28

iv. Plaintiff Has Adequately Pleaded Unjust Enrichment .................. 31

# **TABLE OF AUTHORITIES**

CASES

*A.D. v. Aspen Dental Mgmt., Inc.*,
No. 24 C 1404, 2024 U.S. Dist. LEXIS 161090 (N.D. Ill. Sep. 9, 2024)....................................8

*A.J. v. LMND Med. Grp., Inc.*,
2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024)....................................................2

*Adair v. CIGNA Corp. Servs., LLC*,
2026 U.S. Dist. LEXIS 23288 (E.D. Pa. Feb. 4, 2026) ...........................................10, 12, 14

*Am. Hosp. Ass'n v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. June 20, 2024) ..................................................................8, 9

*In re Asbestos Prods. Liab. Litig. (No. VI)*,
822 F.3d 125 (3d Cir. 2016)......................................................................................................6

*Boyle v. Governor's Veterans Outreach & Assistance Ctr.*,
925 F.2d 71 (3d Cir. 1991)........................................................................................................6

*In re BPS Direct, LLC*,
705 F. Supp. 3d 333 (E.D. Pa. 2023), *appeal filed* No. 223-3235................................4, 10, 13

*Brown v. Google LLC*,
2023 U.S. Dist. LEXIS 139895 (N.D. Cal. Aug. 7, 2023)....................................................17

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ..................................................................................20

*Burger v. Blair Med. Assocs., Inc.*,
964 A.2d 374 (Pa. 2009) ...................................................................................................28, 29

*Clemens v. ExecuPharm, Inc.*,
678 F. Supp. 3d 629 (E.D. Pa. 2023) .......................................................................................27

*Cook v. GameStop, Inc.*,
148 F.4th 153 (3d Cir. 2025) ..............................................................................13, 14, 18, 26

*Cooper v. Mount Sinai Health Sys., Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024)......................................................................................19

*Davis v. Facebook, Inc. (In re Facebook Inc. Internet Tracking Litig.)*,
956 F.3d 589 (9th Cir. 2020) ..................................................................................................16

*Dibish v. Ameriprise Fin., Inc.*,
134 A.3d 1079 (Pa. Super. Ct. 2016).......................................................................................23

*Dittman v. UPMC*,
649 Pa. 496, 196 A.3d 1036 (2018) ....29

*Doe v. Bayhealth Med. Ctr., Inc.*,
No. N24C-09-002 FJJ, 2025 Del. Super. LEXIS 160 (Super. Ct. Apr. 4, 2025) ....9

*Doe v. Google LLC*,
No. 23-cv-02431-VC, 2025 U.S. Dist. LEXIS 108376 (N.D. Cal. June 6, 2025) ....9

*In re Doubleclick Privacy Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ....23, 32

*E.J. v. Tri-County Big Brothers/Big Sisters*,
692 A.2d 582 (Pa. Super. Ct. 1997) ....29

*Emmett v. Delta Airlines, Inc.*,
2024 U.S. Dist. LEXIS 97812 (W.D. Pa. June 3, 204) ....13

*Foglia v. Renal Ventures Mgmt., LLC*,
754 F.3d 153 (3d Cir. 2014) ....5

*Frasco v. Flo Health, Inc.*,
No. 21-cv-00757-JD, 2025 U.S. Dist. LEXIS 180735 (N.D. Cal. Sep. 15, 2025) ....2

*Gay v. Garnet Health*,
No. 23-cv-06950 (NSR), 2024 U.S. Dist. LEXIS 168515 (S.D.N.Y. Sep. 16, 2024) ....2

*In re Google Inc. Cookie Placement Consumer Privacy Litig*,
806 F.3d 125 (3d Cir. 2015) .... *passim*

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
934 F.3d 316 (3d Cir. 2019) ....12

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d at 949 ....17

*Gregg v. Ameriprise Fin., Inc.*,
245 A.3d 637 ....24

*Grossman v. Barke*,
868 A.2d 561 (Pa. Super. Ct. 2005) ....28

*In re Group Health Plan Litig.*,
No. 23-cv-267, 2023 U.S. Dist. LEXIS 227218 (D. Minn. Dec. 21, 2023) ....20

*Gruenke v. Seip*,
225 F.3d 290 (3d Cir. 2000)....................................................................................7

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ..................................................................21

*Hartig Drug Co. v. Senju Pharm. Co.*,
836 F.3d 261 (3d Cir. 2016)....................................................................................4

*Hartley v. Univ. of Chi. Med. Ctr.*,
No. 22 CV 5891, 2025 U.S. Dist. LEXIS 194466 (N.D. Ill. Oct. 1, 2025) ...............................9

*Hartley v. Urban Outfitters, Inc.*,
740 F. Supp.3d 410 (E.D. Pa. 2024) .......................................................................10

*In re Horizon Healthcare Servs. Data Breach Litig.*,
846 F.3d 625 (3d Cir. 2017)....................................................................................30

*Ingrao v. Addshoppers, Inc.*,
2024 U.S. Dit. LEXIS 214748 (E.D. Pa. Nov. 25, 2024) ..........................................13

*Kane v. Univ. of Rochester*,
No. 23-CV-6027-FPG, 2024 U.S. Dist. LEXIS 48515 (W.D.N.Y. Mar. 19, 2024) ....................................................................................................20

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp.3d 928 (N.D. Cal. 2023) ...............................................................10, 18

*Krzyzek v. Openx Techs., Inc.*,
No. 25-cv-05588-SI, 2026 U.S. Dist. LEXIS 15195 (N.D. Cal. Jan. 27, 2026)................20, 21

*Kurowski v. Rush Sys. for Health*,
No. 22 C 5380, 2024 U.S. Dist. LEXIS 126837 (N.D. Ill. July 18, 2024) ..........................2, 19

*Lackner v. Glosser*,
892 A.2d 21 (Pa. Super. Ct. 2006).........................................................................31

*Lutz v. Portfolio Recovery Assocs., LLC*,
49 F.4th 323 (3d Cir. 2022) ....................................................................................5

*Mammana v. Fed. Bureau of Prisons*,
934 F.3d 368 (3d Cir. 2019)....................................................................................31

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d at 795-96, 798 ...................................................................16, 17, 19

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
No. 22-4674, 2023 U.S. Dist. LEXIS 182921 (E.D. Pa. Oct. 10, 2023) ................................29

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
No. 22-4674, 2024 U.S. Dist. LEXIS 177625 (E.D. Pa. Sep. 30, 2024) ........................ *passim*

*In re Nickelodeon Consumer Privacy Litig.*,
2014 U.S. Dist. LEXIS 91286 (D.N.J. July 2, 2014)..........................................................32

*In re Nickelodeon Consumer Privacy Litigation*,
827 F.3d 262 (3d Cir. 2016)........................................................................................ *passim*

*Petris v. Sportsman's Warehouse, Inc.*,
736 F. Supp. 3d 260 (W.D. Pa. Jun. 3, 2024) ..........................................................12, 13

*Popa v. Harriet Carter Gifts, Inc.*,
426 F. Supp. 3d 108 (W.D. Pa. 2019)...............................................................................27

*Regeneron Pharms., Inc. v. Amgen Inc.*,
No. 22-697-RGA-JLH, 2023 U.S. Dist. LEXIS 22855 (D. Del. Feb. 10, 2023).......................6

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) .............................................................................21

*Rodriguez v. FastMed Urgent Care, P.C.*,
741 F. Supp.3d 352 (E.D.N.C. 2024)................................................................................10

*Roma v. Prospect Med. Holdings, Inc.*,
No. 23-3216, 2024 U.S. Dist. LEXIS 138947 (E.D. Pa. Aug. 5, 2024) ...........................11, 30

*In re Rutter's Data Sec. Breach Litig.*,
511 F. Supp. 3d 514 (M.D. Pa. 2021) .........................................................................23, 32

*Semien v. Pubmatic Inc.*,
No. 25-cv-03164-SI, 2026 U.S. Dist. LEXIS 15196 (N.D. Cal. Jan. 27, 2026)......................20

*Serrano v. Campbell Soup Co.*,
773 F. Supp. 3d 127 (D.N.J. 2025) ...................................................................................11

*Simona Opris v. Sincera Reprod. Med.*,
2022 U.S. Dist. LEXIS 94192 (E.D. Pa. May 23, 2022) ............................................22, 24, 28

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)...................................................................................................4, 12

*Steinberg v. CVS Caremark Corp.*,
899 F. Supp. 2d 331 (E.D. Pa. 2012) ....................................................................23, 26, 31

*In re Zynga Privacy Litig* .,
750 F.3d 1098 (9th Cir. 2014) .........................................................................................18

**STATUTES**

18 U.S.C. § 1030........................................................................................................23

18 U.S.C.S. § 2510(8)...................................................................................................16

18 U.S.C. § 2511(1)(a)..........................................................................................15, 18

18 U.S.C. §§ 2511(1)(c) & (d).......................................................................................18

18 U.S.C. § 2511(2)(d) ..................................................................................................18

**OTHER AUTHORITIES**

45 C.F.R. § 160.103 ...................................................................................................5, 7

Fed. R. Civ. P. 12(b)(1).................................................................................................30

Fed. R. Civ. P. 12(b)(6)...............................................................................................4, 6

## I. INTRODUCTION

Defendants Hand & Stone Franchise LLC and Hand & Stone Franchise Corp. (together, "Hand & Stone" or "Defendants") offer a variety of treatments, including Botox, wrinkle relaxers, facial toning, microcurrent toning, hair removal, and massage, through their website, https://www.handandstone.com/ ("Website"). To obtain services from Hand & Stone through the Website, users must navigate to the treatment they want and make an appointment. Unbeknownst to their users, however, Hand & Stone has implemented invisible third-party tracking tools ("Tracking Technologies") that simultaneously collect and transmit information provided by users to Google, Facebook, and Tik Tok ("Information Recipients"). Most notably, the Website shares with the Information Recipients the users' IP addresses, unique identifiers that are used to determine the user's real-world identity, which treatments were viewed, whether they book an appointment and the specific treatment they are booking, and the date, time, and location of their appointment. For example, in the course of using Defendants' website, the fact that Plaintiff Wolf was pregnant was—unbeknownst to her—shared with the social media Information Recipients.

Defendants' Motion to Dismiss ("MTD") does not contest many of Plaintiff's allegations in the Amended Complaint ("AC"),[1] including that Hand & Stone used Tracking Technologies to collect users' sensitive and protected Private Information—defined in the AC as individually identifiable health information ("IIHI") and protected health information ("PHI")—and divulged that information to the Information Recipients. The Information Recipients then used Plaintiff's Private Information to sell targeted digital advertising, including ads targeted to Plaintiff based on the medical information she disclosed to Defendants in confidence. The law is clear that while

[1] First Amended Class Action Complaint, ECF No. 12. All references to "¶" herein refer to same.

organizations like Defendants may use Tracking Technologies, *they can do so only in a way that does not disclose sensitive information*.

Hand & Stone contends (among other things) that Plaintiff failed to allege that the Private Information captured by the Tracking Technologies is actually HIPAA-protected. But Plaintiff has alleged that the Tracking Technologies collect and share sensitive information that reveals medical conditions and the treatments users are seeking alongside unique identifiers that the Information Recipients use to associate such information with the users' actual identities. As numerous other Courts have held in nearly identical cases, these allegations are sufficient to state claims for relief. *See, e.g., Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, No. 22-4674, 2024 U.S. Dist. LEXIS 177625, at *11-12 (E.D. Pa. Sep. 30, 2024) (denying motion to dismiss Electronic Communications Privacy Act ("Wiretap Act") and various common law claims arising from use of tracking technologies on website that disclosed health information); *A.J. v. LMND Med. Grp., Inc.*, 2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024) (same); *Kurowski v. Rush Sys. for Health*, No. 22 C 5380, 2024 U.S. Dist. LEXIS 126837 (N.D. Ill. July 18, 2024) (denying motion for judgement on the pleadings with respect to Wiretap Act claim); *Gay v. Garnet Health*, No. 23-cv-06950 (NSR), 2024 U.S. Dist. LEXIS 168515 (S.D.N.Y. Sep. 16, 2024) (denying motion to dismiss Wiretap Act and common law and state law claims). Notably, a jury in the Northern District of California recently returned a verdict against Facebook for the collection of pregnancy information through the use of tracking tools like those at issue here. *See Frasco v. Flo Health, Inc.*, No. 21-cv-00757-JD, 2025 U.S. Dist. LEXIS 180735, at *29-30 (N.D. Cal. Sep. 15, 2025) ("In sum . . . the Facebook SDK gave Meta the following information from every user: her goals for the app (getting pregnant, tracking her menstrual cycle, or tracking her pregnancy) . . . ; whether she knew certain information about her menstrual cycle . . . . ; her age . . . ; Flo's calculation

tracking her ovulation or pregnancy . . . ; and device and advertising identifiers that could link all the data to a particular device or Facebook profile."). For these reasons and as further explained below, the Court should deny Defendants' motion.

## II. BACKGROUND

Plaintiff Wolf used Defendants' Website to research services and providers and to book appointments. ¶ 32. Unbeknownst to Plaintiff, Defendants programmed and embedded Tracking Technologies in the Website to intercept and share with the Information Recipients real-time granular data generated by its patients' Website interactions. ¶¶ 3-9. The Tracking Technologies are invisible to the user and operate by intercepting information from the user's browser as they interact with the Website. ¶ 4. The presence of the Tracking Technologies can be identified only through sophisticated techniques requiring technical knowledge. *See* ¶¶ 106-112. Tracking Technologies are used extensively throughout the Website and vacuum up tremendous amounts of sensitive information provided by the user, including: the fact the user has booked an appointment after researching a specific treatment, ¶ 107; the User's decision to receive a particular treatment during their visit, *id.*; the specific clinic and time that the user booked an appointment for, ¶¶ 108-109; and the user's IP address and location alongside unique account identifiers and unique device fingerprints, ¶¶ 38, 60, 61, 74. Even so, in their privacy policy ("Privacy Policy"), Defendants promised not to disclose users' Private Information without consent, stating: "Any information that these third parties collect via cookies and action tags is completely anonymous." ¶ 117.

The data divulged by Defendants to the Information Recipients is then associated with a user's profile with the various Information Recipients, or, if a user lacks such a profile, a "shadow profile" maintained by the Information Recipients. ¶¶ 69, 72, 74, 91, 101, 117. The Information Recipients are able to identify the user's real-world identity (*e.g.*, through the user's unique TikTok

account identifier, accessible via a cookie in the user's browser, or digital "fingerprints") and use their Private Information to sell targeted digital advertising, including the ads Plaintiff received, based on their medical conditions and other sensitive information. *See* ¶¶ 69, 72, 89. This process occurs whether or not a user has an account with Defendants. *See* ¶¶ 106-112 (showing how Defendants' Tracking Technologies begin collecting information prior to account creation and continues whether a user creates an account or not).

Plaintiff Wolf's Private Information was shared in this way. Plaintiff Wolf used Defendants' Website beginning in May of 2025 to search for prenatal massages (Plaintiff Wolf was pregnant at the time) and facials services as well as potential injectable, toning, and hair removal treatments. ¶ 33. As a result of using the Website for these purposes, Plaintiff Wolf's Private Information—including the fact that she booked a prenatal massage—was shared with the Information Recipients. ¶¶ 35-39.

## III. LEGAL STANDARD

To demonstrate Article III standing, a plaintiff must plead a) that she suffered an injury in fact, b) that is fairly traceable to defendants' conduct, and c) which is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). The only element Defendants dispute is lack of an injury in fact. An injury in fact requires a showing that a plaintiff suffered "an invasion of a legally protected interest that is concrete and particularized and actual or imminent." *Id.* at 339 (quotations omitted). "Standing allegations need not be crafted with precise detail, nor must the plaintiff prove his allegations of injury." *In re BPS Direct, LLC*, 705 F. Supp. 3d 333, 348 (E.D. Pa. 2023), *appeal filed* No. 223-3235 (quotation omitted).

"The distinction between Rules 12(b)(1) and 12(b)(6) is important because the 12(b)(6) standard affords significantly more protections to a nonmovant." *Hartig Drug Co. v. Senju Pharm.*

*Co.*, 836 F.3d 261, 268 (3d Cir. 2016). On a 12(b)(6) motion, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the nonmovant." *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014) (quotation marks and citations omitted). The Third Circuit "uses a three-step process to evaluate a motion to dismiss a complaint for failure to state a claim for relief." *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 327 (3d Cir. 2022). First, an "articulation of the elements of the claim" is required, after which the court "reviews the complaint and disregard[s] any formulaic recitation of the elements," and "[t]he third step evaluates the plausibility of the remaining allegations." *Id.* at 327-28 (cleaned up). If the court finds "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of a claim, then [plaintiff] plausibly pleads a claim." *Id.* at 328 (internal citations omitted).

## IV. ARGUMENT

### A. Hand & Stone Shared Its Users' Medical Information

Hand & Stone, as a provider of health care, is subject to HIPAA's requirements. Under HIPAA, a "covered entity" includes "[a] health care provider who transmits any health information in electronic form in connection with a transaction covered by this subchapter." 45 C.F.R. § 160.103. A "health care provider" includes any "person or organization who furnishes, bills, or is paid for health care in the normal course of business," and "health care means care, services, or supplies related to the health of an individual, including "[p]reventive, diagnostic, ***therapeutic***, rehabilitative, maintenance, or palliative care, and counseling, service, assessment, or procedure with respect to the physical or mental condition, or functional status, of an individual or that affects the structure or function of the body." *Id* (emphasis added).

Defendants' argument that Hand & Stone is not subject to HIPAA because they do not "engage in covered transactions" is deficient because it calls for the Court to consider matters outside the AC. "[A] court considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may consider *only* the allegations contained in the pleading to determine its sufficiency." *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 (3d Cir. 2016). The question whether Hand & Stone engages in HIPAA-covered transactions, e.g., the transmission of information in connection with health care payments, coordination of benefits, first reports of injury, or health-care related electronic funds transfers, is a factual matter not suitable for resolution on the pleadings. The Court should reject Defendants' attempt to plead its own version of the facts. *See, e.g., Regeneron Pharms., Inc. v. Amgen Inc.*, No. 22-697-RGA-JLH, 2023 U.S. Dist. LEXIS 22855, at *13 (D. Del. Feb. 10, 2023) ("Once Amgen's extra-Complaint documents are removed from the analysis, most of its arguments fall away . . . ."); *Boyle v. Governor's Veterans Outreach & Assistance Ctr.*, 925 F.2d 71, 74-75 (3d Cir. 1991) (explaining that if "the court considers evidence beyond the pleadings in a Rule 12(b)(6) motion, it must do so in the context of a summary judgment motion," which "'provides further safeguards for the plaintiff: in addition to having all of plaintiff's allegations taken as true, with all their favorable inferences, the trial court cannot grant a summary judgment unless there is no genuine issue of material fact.'"). Drawing all inferences in Plaintiff's favor leads to the conclusion that Hand & Stone engaged in covered transactions sufficient to trigger its obligations under HIPAA to protect its patients' sensitive information from disclosure. *See, e.g.*, ¶¶ 2, 11, 20, 32.

Regardless, whether or not Hand & Stone is subject to HIPAA, the information it shared with the Information Recipients is the kind of IIHI that is protected by HIPAA. The HIPAA regulations define IIHI as "information that is a subset of health information, including

demographic information collected from an individual, and: (1) [i]s created or received by a health care provider . . . and (2) [r]elates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual . . . and (i) [t]hat identifies the individual; or (ii) [w]ith respect to which there is a reasonable basis to believe the information can be used to identify the individual." 45 C.F.R. § 160.103.

Through the Website, Defendants collect its patients' "medical history, current medications, and whether you're pregnant, breastfeeding, or have certain conditions that may require medical clearance" prior to receiving a treatment. ¶ 19. Plaintiff visited the Website to book appointments for a prenatal massage during her pregnancy and provided Defendants with information about her pregnancy and medical history, and "information generated by Plaintiff's use of the Website—including each of the URLs for the pages visited by Plaintiff—which was transmitted to the Information Recipients via the Tracking Technologies concurrently with her use of the Website." ¶¶ 33-34. This information included, for example, her browsing information, the treatments she researched, the type of treatment she booked, and the date, time, and location of the appointment. *See* ¶¶ 106-112. There can be little doubt that one's pregnancy status is protected medical information. *See Gruenke v. Seip*, 225 F.3d 290, 302-03 (3d Cir. 2000) (pregnancy related information "not only falls squarely within the contours of the recognized right of one to be free from disclosure of personal matters . . . but also concerns medical information, which we have previously held is entitled to this very protection.")

Defendants' assertion that "Web page URLs are not medical information, whether in the context of HIPAA or common law torts," MTD at 1, does not stand up to scrutiny. As discussed in detail below, *see infra* Section C(1)(i), the Third Circuit has held that some URLs contain substantive information, and district courts in this Circuit have found that unlawful sharing of

URLs can constitute a violation of HIPAA. *See In re Google Inc. Cookie Placement Consumer Privacy Litig*, 806 F.3d 125, 139 (3d Cir. 2015) ("[W]e are persuaded that—at a minimum—some queried URLs qualify as content" under the Wiretap Act.); *see also Murphy*, 2024 U.S. Dist. LEXIS 177625, at 10–11. (finding that URLs contained IIHI and that sharing of same potentially violated HIPAA).[2] Such is the case here.

Defendants also question the applicability of the Office of Inspector General – Department of Health & Human Services guidance ("Online Tracking Bulletin"), arguing that the Online Tracking Bulletin should not be considered under the facts of this case. MTD at 8-9. As described in the AC, the Online Tracking Bulletin was recently partially vacated on grounds of improper rulemaking by *Am. Hosp. Ass'n v. Becerra*, 738 F. Supp. 3d 780 (N.D. Tex. June 20, 2024). ¶ 7 n.7; *see also* Online Tracking Bulletin (stating in a headnote that *Becerra* "vacated the [Online Tracking Bulletin] to the extent it provides that HIPAA obligations are triggered in 'circumstances where an online technology connects (1) an individual's IP address with (2) a visit to a[n] [unauthenticated public webpage ("UPW")] addressing specific health conditions or healthcare providers.' HHS is evaluating its next steps in light of that order").

Plaintiff addresses *Becerra* head on in the AC. Contrary to Defendants' assertions, *Becerra* found improper *only* the portion of the OCR's guidance regarding covered entities' collection and disclosure to third parties of users' IP addresses collected from UPWs. Thus, *Becerra* in no way affects or undermines OCR's guidance regarding practices like those alleged here, in which Hand & Stone collects and discloses unique personal identifiers (such as Google or Facebook identifiers)

[2] *See also A.D. v. Aspen Dental Mgmt., Inc.*, No. 24 C 1404, 2024 U.S. Dist. LEXIS 161090, at *8 (N.D. Ill. Sep. 9, 2024) ("Plaintiffs allege that Aspen, via the tracking devices employed on its webpages, transmitted [via shared URLs] Plaintiffs' patient status, medical conditions, information about their medical appointments and treatments, specific medical providers, and other sensitive health information to third parties. . . . Such information qualifies as IIHI for purposes of HIPAA.").

to third parties while patients make appointments and reveal highly sensitive information about their medical conditions. *See Becerra* at 789-90, 807, n. 8 (vacating OCR guidance with respect to the "Proscribed Combination" defined as "circumstances where an online technology connects (1) an individual's IP address with (2) a visit to a UPW addressing specific health conditions or healthcare providers" but stating that "[s]uch vacatur is not intended to, and should not be construed as, limiting the legal operability of other guidance in the germane HHS document").

Here, *Becerra* is inapplicable because Defendants disclosed far more data than her IP address, including her unique identifiers and sensitive medical information. Numerous courts have concluded that *Becerra* has no material impact on facts like those presented here. *See Doe v. Google LLC*, No. 23-cv-02431-VC, 2025 U.S. Dist. LEXIS 108376, at *9 n.3 (N.D. Cal. June 6, 2025) ("[T]he posture of [*Becerra*] was much different than this one. That case was an APA challenge to HHS guidance based on the scope of HIPAA, regarding HHS's authority to promulgate that guidance. This case is brought by patients who allege that they have *current* conditions and that their activity on the providers' websites were 'related to' those diagnoses."); *Hartley v. Univ. of Chi. Med. Ctr.*, No. 22 CV 5891, 2025 U.S. Dist. LEXIS 194466, at *11 (N.D. Ill. Oct. 1, 2025) ("[*Becerra*'s] holding that information collected from public healthcare websites does not *always* amount to individually identifiable health information does not also mean that information from public websites can *never* amount to such information."); *Doe v. Bayhealth Med. Ctr., Inc.*, No. N24C-09-002 FJJ, 2025 Del. Super. LEXIS 160, at *18 (Super. Ct. Apr. 4, 2025) ("The Court in *Becerra* held that to establish IIHI the website visitor's subjective intent had to be known and had to relate to their *own* healthcare because an IP address alone was not sufficient to serve as an identifier for IIHI purposes. Whereas in the instant case, Plaintiffs allege their Facebook IDs were linked to their health information to establish their patient

statuses.”). Defendants cannot seriously contend that their systematic, comprehensive data sharing in connection with users purchasing treatments for themselves is equivalent to a user browsing an UPW with no clear connection to that user’s own healthcare needs. Both Defendants and the Information Recipients must be confident enough that Plaintiff’s browsing relates to and reveals her own medical conditions and other sensitive information, given that the purpose of the Tracking Tools is to collect such information to serve targeted advertisements.

### B. Plaintiff Has Article III Standing

“[C]ourts in this District [and nationwide] have widely noted that the interception of health information would give rise to standing.” *Adair v. CIGNA Corp. Servs., LLC*, 2026 U.S. Dist. LEXIS 23288, *25 (E.D. Pa. Feb. 4, 2026).[3] Despite this clear authority, Defendants challenge Plaintiff’s allegations that her Private Information was intercepted and disclosed to third parties without her knowledge or consent as lacking Article III standing. This argument fails.

---

[3] “See, e.g. *Delong*, 2025 U.S. Dist. LEXIS 164060, 2025 WL 2447787, at *6 (‘While a third party collecting certain data like credit card, banking, or *medical information* may constitute concrete harm, that is . . . only because such information is private.’ (emphasis added)); *In re BPS Direct, LLC*, 705 F. Supp.3d 333, 347 (E.D. Pa. 2023) (holding plaintiffs lacked standing ‘because they do not allege they made purchases on the Websites or engaged in activity which would cause their browsers to send highly sensitive personal information such as *medical diagnosis information* or financial data from banks or credit cards’ (emphasis added)); *Hartley v. Urban Outfitters, Inc.*, 740 F. Supp.3d 410, 420-21 (E.D. Pa. 2024) (noting standing may have existed if the ‘spy pixels’ embedded within a retailer’s promotional emails had collected ‘highly sensitive categories of personal information,’ including ‘medical history’). And courts elsewhere have found standing in cases alleging the unauthorized digital tracking of medical information. *See, e.g.*, *Rodriguez v. FastMed Urgent Care, P.C.*, 741 F. Supp.3d 352, 360-61 (E.D.N.C. 2024) (‘Disclosing Rodriguez’s private medical information without the meaningful opportunity to prevent the disclosure satisfies Article III's injury requirement.’); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp.3d 928, 939-40 (N.D. Cal. 2023) (holding plaintiffs alleged a cognizable invasion of privacy based on the defendant's nonconsensual online collection of multiple ‘categories of sensitive information,’ including ‘race, location, politics, and medical information’).” *Id.* at 25-26.

### 1. Plaintiff Alleges Concrete Harm Because She Did Not Receive the Benefit of Her Bargain

Plaintiff Wolf has alleged concrete harm in her loss of the benefit of the bargain. "A plaintiff claiming 'financial harm will easily satisfy' the injury in fact showing because such harm 'is a classic and paradigmatic form of injury in fact.'" *Serrano v. Campbell Soup Co.*, 773 F. Supp. 3d 127, 146 (D.N.J. 2025) (quoting, among other third circuit authorities, *Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 163 (3d Cir. 2017)). Plaintiff used Defendants' Website to, among other things, book appointments for services. ¶¶ 32-34. Ms. Wolf "schedule[d] appointments believing that Defendants would keep her Private Information confidential and would not have done so had she known Defendants' actual practices." ¶ 41. Plaintiff Wolf "trusted that the Private Information that she unknowingly provided to Defendants would be safeguarded according to Defendants' policies, industry standards, and state and federal law," ¶ 40, and Defendants' Privacy Policy explains that "[a]ny information that these [third-party advertising companies] collect via cookies and action tags is ***completely anonymous***," ¶ 117 (emphasis added). Plaintiff was denied the benefit of the bargain in that she purchased services from Defendants with the understanding that any Private Information she provided in connection with such purchase, if disclosed to third parties, would not be disclosed in a way that identified her. ¶¶ 34-36. Thus, Plaintiff bargained for, but did not receive, adequate security for her Private Information. This is a concrete injury. *See Roma v. Prospect Med. Holdings, Inc.*, No. 23-3216, 2024 U.S. Dist. LEXIS 138947, at *42 n.19 (E.D. Pa. Aug. 5, 2024) ("[E]ach Named Plaintiff alleges that they 'obtained services' from Prospect that were 'intended to be accompanied by adequate data security . . . but [were] not.' They thus 'did not get what they paid for and agreed to.' At the motion-to-dismiss stage, as buttressed by the additional non-conclusory allegations in the Amended Complaint, that is sufficient to allege a bargain with Prospect as necessary to proceed under a benefit-of-the-bargain theory.").

### 2. Plaintiff Alleges Concrete Harm Through Disclosure of Sensitive Medical Information

Defendants mischaracterize the nature of Plaintiff's information disclosed and minimize its sensitivity. Defendants did not just track a 'user'—they unmasked a patient. By linking Plaintiff's specific searches for pregnancy-related treatments to her social media identities, Defendants shared her private medical condition and personal information with third-party advertisers. This systematic disclosure of medical conditions—obtained without authorization or consent—is a classic invasion of privacy. Because this sensitive information was immediately used for targeted marketing, the harm to the Plaintiff is both concrete and demonstrable.

A concrete harm need not be a tangible one. *Spokeo*, 578 U.S. at 340. Intangible harms resulting from the "furtive capture or surreptitious disclosure of [web users'] personal information" "are 'concrete' as they involve 'clear *de facto* injur[ies], *i.e.*, the unlawful disclosure[s] of legally protected information.'" *Petris v. Sportsman's Warehouse, Inc.*, 736 F. Supp. 3d 260, 267, 269 (W.D. Pa. Jun. 3, 2024), citing *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), *In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262, 274 (3d Cir. 2016) and *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3d Cir. 2019). "An alleged harm has the 'same character' as the harm of intrusion upon seclusion where there is an even marginal invasion of another's private sphere or disturbance of another's interest in solitude or seclusion." *Adair*, 2026 U.S. Dist. LEXIS 23288, *20-21. In *Adair*, plaintiffs alleged that the defendant used third-party tracking pixels and session-replay code to capture users' website interactions—including data revealing sensitive medical and insurance details—which third parties used for targeted advertising, causing plaintiffs embarrassment and loss of privacy. *Id.* at 21-22. The Court held those allegations to be sufficiently concrete for standing. *Id.*

Similarly, here, Plaintiff visited Defendants' website specifically to search for pregnancy-related massage services, as well as facials, injectables, toning, and hair removal treatments, while she was pregnant. ¶¶ 31-34. These are not generic browsing activities on a retail website; rather, they are interactions with a website seeking specific medical-related and cosmetic treatments. Plaintiff further alleges that the tracking technologies transmitted data identifying the specific treatment pages she viewed along with her unique user identifiers to third parties Google, Facebook, and TikTok. ¶¶ 35-41, 58-112. This combination of information did *actually* disclose that Plaintiff—an identifiable individual through her Google, Facebook, and TikTok accounts—was seeking specific health-related treatments as a pregnant woman. Sharing such personal information with "social media and digital marketing services" "amounted to a high degree of dissemination." *Petris*, 736 F. Supp. 3d at 271.

Defendants' reliance on *Cook v. Gamestop ("Cook I"), In re BPS*, and *Ingrao v. Addshoppers, Inc.*[4] are wholly misplaced as those decisions are based on readily distinguishable facts. Unlike here, those decisions were based on plaintiffs failing to allege the sharing of sensitive or personal data, or the sharing of data at all, in order to establish a concrete injury. *See Cook I*, 148 F.4th at 159 ("information captured by session replay code was not sensitive or personal . . . [which was only] mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), URLs of web pages visited, and/or other electronic communications in real-time"); *BPS Direct*, 705 F. Supp. 3d at 353-360 (users did not share any information, or only shared "mouse clicks and movements, keystrokes, search terms . . . ", or were *not* deceived into providing protected information); *Ingrao*, 2024 U.S. Dist. LEXIS 214748, at *20 (captured only users' "internet browsing activities and email addresses"); *but see also Emmett v. Delta*

[4] *Ingrao v. Addshoppers, Inc.*, 2024 U.S. Dit. LEXIS 214748 (E.D. Pa. Nov. 25, 2024).

*Airlines, Inc.*, 2024 U.S. Dist. LEXIS 97812, *37 (W.D. Pa. June 3, 204) (session replay allegations sufficient for Article III standing under PA wiretap act). Plaintiff's allegations here are of a different character. The fact that Plaintiff was pregnant and seeking pregnancy-related services is quintessentially private medical-related information. To disclose such sensitive personal information without consent places the instant case far outside the realm of routine retail-tracking disputes. "The Third Circuit's recent decision in *Cook* does not undermine this conclusion." *Adair*, 2026 U.S. Dist. LEXIS 23288, *22.

**3. Plaintiff Alleges Immediate and Ongoing Tangible Harms**

Defendants further mischaracterize Plaintiff's injuries as being "speculative" and "conclusory." Plaintiff has pleaded specific and tangible harms that are realized and remain ongoing. First, Plaintiff alleges she was immediately subjected to unsolicited targeted ads for healthcare, medical spas, Botox, and pregnancy-related services. ¶¶ 39-41. This caused significant mental distress arising from the realization that advertisers were aware of her medical condition and interest in specific cosmetic treatments and the persistent fear that friends or family might learn of same through these ads. *Id.* Second, Plaintiff provided her personal and medical-related data to Defendants under the reasonable belief that it would be kept confidential. *Id.* ¶¶ 113-118. Because Defendants disclosed her private information under false pretenses for analytics and marketing benefits without her knowledge, Plaintiff did not receive the secure service she was promised, resulting in a loss of the benefit of her bargain. Third, Plaintiff's private data has a recognized market value, evidenced by, among other things, the fact that Defendants utilized it to boost their own revenues and marketing efficiency. ¶¶ 28, 63, 80, 161-182. The unauthorized disclosure and subsequent commercialization of this data by Information Recipients has directly diminished its value to Plaintiff.

Defendants' argument that the risk is 'moot' because Plaintiff's pregnancy may have concluded is flawed. The invasion of privacy occurs at the moment of disclosure; the fact that a medical condition may change does not retroactively erase the unauthorized transmission of that data to third parties who now permanently possess it. Furthermore, Plaintiff alleges a continued and ongoing risk to her Private Information and a continuing interest in ensuring her future medical communications are protected from further unauthorized disclosure.

Under these facts, Plaintiff has pleaded a concrete and particularized injury that is actual or imminent, not conjectural or hypothetical, satisfying the requirements for Article III standing

### C. All Of Plaintiff's Claims Are Adequately Pleaded

#### 1. Plaintiff's Wiretap Act Claim Is Well-Pleaded

The Wiretap Act provides a private right of action against one who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). "A plaintiff pleads a prima facie case under the Act by showing that the defendant (1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *In re Google Inc*., 806 F.3d at 130. Defendants challenge Plaintiff with respect to whether the intercepted communications were "contents" and on the ground that they and the Information Recipients were parties to the intercepted communications. As explained below, each argument fails.

##### *i. Plaintiff Adequately Alleges The "Content" Of Her Communications Was Intercepted*

As explained above, the Tracking Technologies intercept and disclose Website users' communications and activities in real-time, and that such communications reveal sensitive medical

information generated or input by users. Plaintiff has therefore adequately pled that Defendants enabled the interception of the "content" of her sensitive and personal health communications.

The Wiretap Act defines "content" as "includ[ing] any information concerning the substance, purport, or meaning of that communication." 18 U.S.C.S. § 2510(8). Courts routinely hold that intercepted URLs and other data that divulge users' "personal interests, queries, and habits" are "contents" of communications under the Wiretap Act. *Davis v. Facebook, Inc. (In re Facebook Inc. Internet Tracking Litig.)*, 956 F.3d 589, 605 (9th Cir. 2020); *see also In re Google Inc.*, 806 F.3d at 139 ("[A]ddresses, phone numbers, and URLs may be dialing, routing, addressing, or signaling information, but only when they are performing such a function. If an address, phone number, or URL is instead part of the substantive information conveyed to the recipient, then by definition it is 'content.'").

Here, Plaintiff goes further, alleging that Defendants divulged IIHI such as the specific treatments she viewed, that she booked an appointment for prenatal massage, and the location, date, and time of her appointment. *See* ¶¶ 33-35, 106-112 (showing that TikTok receives, *inter alia*, URL parameters revealing that the user viewed the "Facial Filler" and "Injectables" pages along with exact appointment booking information). Such information is "content" because it divulges a profile of a user's medical conditions and treatments sought. *See Murphy*, 2024 U.S. Dist. LEXIS 177625, *9 (holding plaintiffs adequately alleged interception of "contents" of their communications under ECPA based on sharing of URLs revealing IIHI); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 795-96, 798 (holding that the interception of URLs revealing healthcare-related information were "content" under the Wiretap Act). On facts like these, courts

regularly find that specific user activities and data captured by tracking technologies constitute "content."[5]

Although Defendants acknowledge that URLs containing substantive medical information are content for the purposes of the Wiretap Act, they argue that the information collected and transmitted by the Tracking Technologies here is mere record information. *See* MTD at 16. Defendants appear to be confused, as Plaintiff has alleged that the disclosed data included URLs that revealed confidential medical information. *See* ¶¶ 33-34, 106-112. In other words, the disclosed data is not mere "routing" or "record" information because it also reflected Plaintiff's medical conditions, including her pregnancy. *See In re Google Inc.*, 806 F.3d at 139 ("[R]outing information and content are not mutually exclusive categories."); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 795-96, 798 (holding that the interception of URLs revealing healthcare-related information were "content" under the Wiretap Act).

The cases upon which Defendants rely are not apposite. In *Cook I*, a plaintiff alleged that video game seller Gamestop had "captured a record of the URLs of web pages she visited while on GameStop's site" but failed to allege enough information for the Court to conclude that the URLs generated by her use of the website contained content. 689 F. Supp. 3d 58, 70-71 (W.D. Pa. 2023). Here, in contrast, Plaintiff has alleged the pages she visited and that she booked an appointment for a specific service while also providing a detailed look at how the Tracking Technologies capture information from such activities. *See* ¶¶ 33-34, 106-112. Also in contrast with this case, "none of the information [plaintiffs] entered on GameStop's website was personal

---

[5] *See, e.g., Brown v. Google LLC*, 2023 U.S. Dist. LEXIS 139895, at *40-41 (N.D. Cal. Aug. 7, 2023) (holding users' searches constitute "content"); *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d at 949 (finding that categories of the website, categories that describe the current section of the website, and referrer URL that caused navigation to the current page constituted "content").

or sensitive," which is very different than here. *Cook v. GameStop, Inc.*, 148 F.4th 153, 160 (3d Cir. 2025). And both *Katz-Lacabe v. Oracle Am., Inc.* and *Graf v. Zynga Game Network, Inc. (In re Zynga Privacy Litig.)*, acknowledge that URLs containing search terms or other substantive information may qualify as content. *See Katz-Lacabe*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (noting as potential content URLs containing "search terms which would reveal the content a user searched for or full-string detailed URLs that might contain folder and file names") (internal citation omitted); *In re Zynga Privacy Litig* .,750 F.3d 1098, 1108-09 (9th Cir. 2014) ("Under some circumstances, a user's request to a search engine for specific information could constitute a communication such that divulging a URL containing that search term to a third party could amount to disclosure of the contents of a communication."). Such is the case here.

*ii. Plaintiff Has Adequately Alleged an "Interception" Occurred Because The Party Exception to the Wiretap Act Is Inapplicable*

Defendants next argue that no interception occurred because they and the Information Recipients were parties to the communications. MTD at 17-18. Although Section 2511(2)(d) provides that "no cause of action will lie against a private person where such person is a party to the communication," *In re Google Inc.*, 806 F.3d at 130, this "party exception" is inapplicable to claims under 18 U.S.C. § 2511(1)(a) where, as here, Defendants' wiretapping was conducted with criminal and/or tortious intent. *See* 18 U.S.C. § 2511(2)(d). Plaintiff also alleges violations of 18 U.S.C. §§ 2511(1)(c) & (d), which provide alternate bases of liability. Unlike 18 U.S.C. § 2511(1)(a), the party exception does not apply to the disclosure or use of intercepted communications. Instead, subsections (c) and (d) provide liability for disclosure or use regardless of who intercepted the communications. Defendants fail to address these two sections of the Wiretap Act, and their arguments against Plaintiff's claim under Section 2511(1)(a) are unpersuasive.

Plaintiff alleges that Defendants acted with tortious intent in violation of the Constitution and laws of the United States and the states. ¶¶ 248, 253. Specifically, Defendants knowingly implemented and intentionally configured the Pixels to capture protected Private Information in violation of HIPAA, state law, regulatory guidance, industry standards, and consumer expectations of privacy. ¶¶ 16-25, 119-130, 141-145, 254-258. Defendants used surreptitious technology to obtain the Private Information because they knew their users would not consent or would demand compensation. ¶ 98. As Courts in this District and around the country have established, the use of Tracking Technologies to share IIHI evinces a criminal and tortious purpose and is sufficient to establish that the party exception does not apply to Defendants. *See Murphy*, 2024 U.S. Dist. LEXIS 177625, *11-12 ("Plaintiffs allege that Defendant intercepted Plaintiffs' IIHI for the intended use of disclosing the information to Meta, which is a HIPAA violation and therefore prohibited by federal law. If Plaintiffs' allegations are to be taken as true, which the Court must do at the motion to dismiss stage, Defendant at minimum intended to violate HIPAA with the disclosure of Plaintiffs' IIHI to Meta. . . . Plaintiffs' ECPA claim will proceed."); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 796 (explaining that allegations of "the use of patient data for advertising" are sufficient at the pleading stage and the crime-tort exception focuses on whether "the purpose for the interception—its intended use—was criminal or tortious."); *Kurowski v. Rush Sys. for Health*, No. 22 C 5380, 2024 U.S. Dist. LEXIS 126837, at *21-22 (N.D. Ill. July 18, 2024) ("In sum, the Court concludes that Kurowski has plausibly alleged that Rush acted with the conscious desire to knowingly make unauthorized disclosures of her IIHI to Facebook, Google, and Bidtellect for purposes of invoking the crime-or-tort exception."); *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 381-82 (S.D.N.Y. 2024) (holding that plaintiffs' allegations "plausibly support the inference that Mount Sinai, for commercial ends, intentionally disclosed

individually identifiable patient health information, and thus violated HIPAA, which makes it a crime for a health care provider to disclose individually identifiable health information for commercial gain").[6]

Furthermore, even in the absence of a HIPAA violation, numerous Courts have held that the use of Tracking Technologies for the purpose of "associat[ing] Plaintiffs' data with preexisting user profiles [of the Information Recipients] is a further use of Plaintiffs' data that satisfies" the criminal or tortious act exception. *See Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1068 (N.D. Cal. 2021) (finding party exception inapplicable to Wiretap Act claim because plaintiffs' "communications were allegedly intercepted for the purpose of associating their data with user profiles, which is a criminal and tortious act"); *Krzyzek v. Openx Techs., Inc.*, No. 25-cv-05588-SI, 2026 U.S. Dist. LEXIS 15195 (N.D. Cal. Jan. 27, 2026) (same); *Semien v. Pubmatic Inc.*, No. 25-cv-03164-SI, 2026 U.S. Dist. LEXIS 15196 (N.D. Cal. Jan. 27, 2026) (same). Collecting user data for the purpose of associating it with their accounts with Information Recipients (i.e., their real-world identities) is a core function of the Tracking Technologies, *see* ¶¶ 69, 72-73, 89, 92, 101-102, 104, and Defendants were aware of such purpose,[7] *see* ¶¶ 214, 243, 246-249. Such act, which constitutes an invasion of privacy and/or breach of confidence, follows and is distinct from

[6] *See also Kane v. Univ. of Rochester*, No. 23-CV-6027-FPG, 2024 U.S. Dist. LEXIS 48515, at *22 (W.D.N.Y. Mar. 19, 2024) ("This Court likewise concludes that Plaintiffs can invoke the tort-crime exception. Plaintiffs have alleged that Defendant configured the Pixel to collect and disclose, among other things, that a specific user booked an appointment with a specific healthcare provider and the search terms that the user entered to find that provider."); *In re Group Health Plan Litig.*, No. 23-cv-267 (JWB/DJF), 2023 U.S. Dist. LEXIS 227218, at *20-23 (D. Minn. Dec. 21, 2023) (finding party exception did not apply under like circumstances).

[7] Defendants' intent is a factual question not suitable for resolution at this stage. *See Meta Platforms, Inc.*, 2023 U.S. Dist. LEXIS 158683, at *10 (denying motion to dismiss ECPA claim; "What Meta's true intent is, what steps it actually took to prevent receipt of health information, the efficacy of its filtering tools, and the technological feasibility of implementing other measures to prevent the transfer of health information, all turn on disputed questions of fact that need development on a full evidentiary record.").

the initial interception; it is therefore an "act[] secondary to the acquisition of the communication involving tortious or criminal use of the interception's fruits." *Cf. In re Google Inc.*, 806 F.3d at 145 (finding the "criminal-tortious purpose exception" unavailing when "plaintiffs plead no tortious or criminal *use* of the acquired internet histories" beyond the alleged initial intrusion upon seclusion).

Defendants finally argue that their interception and sharing of their users' Private Information was permissible because it was done for a legitimate commercial purpose. MTD at 20. This argument fails as well. "Put simply, committing a tort and seeking a profit are not mutually exclusive (if anything, the latter is often the reason for the former)." *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1090 (N.D. Cal. 2025) (holding crime-tort exception applied and explaining that "this Court is not persuaded that commercially exploiting unlawfully obtained information is 'licit' merely because it is profitable"); *see also Krzyzek*, 2026 U.S. Dist. LEXIS 15195, at *21-22 ("As numerous lower courts have found, being primarily motivated by profit does not render the crime-tort exception inapplicable.") (citing *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024) (collecting cases)). Defendants rely on cherrypicked quotes from discussions of intrusion upon seclusion claims in cases where the use of tracking technologies was deemed inoffensive because it did not run counter to users' expectations. *Nickelodeon*, 827 F.3d at 294-295 (drawing a distinction between third-party cookies deployed by defendant Google on defendant Viacom's website and first-party cookies deployed by Viacom on its own website, explaining that such intrusion into its users' privacy was offensive because there was an "expectation of privacy on Viacom's websites"); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090-91 (N.D. Cal. 2022) (explaining that Google's "data collection is not blatantly deceitful" in that it does not contravene its affirmative promises and "Plaintiffs do not allege that

the data allegedly collected by Google is sufficiently specific or personal, and its collection sufficiently harmful, to be highly offensive"). To the extent that this is a relevant consideration to whether the tort-crime exception obtains here, the instant case is more akin to the Third Circuit's analysis of Viacom's use of tracking technology in *In re Nickelodeon*: Defendants surreptitiously deployed the Tracking Technologies on their own Website in contravention of their representations in the Privacy Policy, *see* ¶ 117, and its users had reasonable expectations that their Private Information would be kept confidential, ¶¶ 146-151.

### 2. Plaintiff's Unfair Trade Practices Claim Adequately Alleges Both Ascertainable Loss and Reliance

#### *i. Plaintiff Adequately Alleges Ascertainable Loss*

Plaintiff's allegations of financial and proprietary harm sufficiently constitute cognizable ascertainable loss under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). First, Plaintiff alleges diminution in the value of her Private Information. ¶¶ 29, 41, 161-183. Defendants argue that this cannot constitute ascertainable loss because Plaintiff does not allege she intended to participate in a market for her data. This argument improperly conflates the concept of property value with market participation. Information has economic value regardless of whether the individual who possesses it intends to sell it. The fact that companies pay substantial sums for access to consumer data, and that Defendants configured their Website specifically to share user data with third parties, demonstrate that this information has quantifiable economic value. When Defendants disclosed Plaintiff's Private Information without authorization, they deprived Plaintiff of exclusive control over that information. This loss of control constitutes a diminution in value. Plaintiff can no longer choose to keep this information private, nor can she control how it is used or to whom it is disclosed. This represents a concrete economic loss. *See Simona Opris v. Sincera Reprod. Med.*, 2022 U.S. Dist. LEXIS 94192, *33 (E.D. Pa. May 23,

2022) ("Plaintiffs have alleged lost property value to their PII and PHI, which serves as another form of lost property.")

Second, Plaintiff alleges lost benefit of the bargain. ¶¶ 12, 29, 41, 161-183. She paid for and received services from Defendants under the reasonable expectation that her Private Information would be kept confidential, as represented in Defendants' Privacy Policy. Instead, Defendants systematically disclosed her Private Information to third parties for Defendants' own commercial benefit. The difference between the services Plaintiff reasonably expected to receive (services with confidentiality protections) and the services she actually received (services accompanied by unauthorized data sharing) constitutes ascertainable economic loss. *See, e.g.*, *Dibish v. Ameriprise Fin., Inc.*, 134 A.3d 1079, 1089 (Pa. Super. Ct. 2016) (ascertainable loss in the diminution in value of personal information and in the loss of the benefit of their bargain).

Defendants' lean on unavailing caselaw to support their 'no loss' argument. Defendants' reliance on *In re Google Inc.*, 806 F.3d 125, is misplaced. That case turned on failure to plead "damage or loss" specifically under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. *Id.* at 149. Here, by contrast, Plaintiff alleges a UTPCPL claim based on the premise that Defendants themselves actively profit from Plaintiff's and consumers' private data through surreptitious tracking technologies. Defendants' invocation of *In re DoubleClick* is also unpersuasive, as that out-of-circuit decision similarly hinges on the specific statutory requirements of the CFAA. MTD at 23; 154 F. Supp. 2d 497 (S.D.N.Y. 2001). Likewise, Defendants' reliance on *In re Rutter's Data Security Breach Litigation* is misplaced; that case found a lack of ascertainable loss because the claims were centered only on "lost time." 511 F. Supp. 3d 514, 541 (M.D. Pa. 2021). Finally, as an older district court case, *Steinberg* fails to account for the now-well-recognized commercial market for targeted advertising and consumer profiling. 899 F. Supp.

2d 331, 339 (E.D. Pa. 2012). Personal information has economic value—both because companies expend substantial resources to acquire and monetize it, and because individuals possess the right to control its use and disclosure. *See supra, Simona Opris*, 2022 U.S. Dist. LEXIS 94192, *33.

*ii. Plaintiff Adequately Alleges Reliance*

Defendants contend that Plaintiff does not plausibly allege justifiable reliance because she does not allege that she ever viewed the Privacy Policy. MTD at 24. This argument fails for the reasons set forth below.

First, Plaintiff's UTPCPL claim is not based solely on misrepresentations in the Privacy Policy. Plaintiff alleges that Defendants engaged in deceptive practices by designing and operating their Website in a manner that created the false impression that communications would remain confidential. Specifically, Plaintiff alleges that Defendants failed to clearly and prominently disclose the use, purposes, and privacy risks of the Tracking Technologies or the full nature and extent of their data-sharing practices with third parties. ¶¶ 6, 9, 10, 26, 36, 39-41, 112, 117-119, 152. The deceptive practice was not merely what Defendants said in their Privacy Policy, but what they failed to disclose about their actual furtive data collection and sharing practices. This conduct itself was deceptive, regardless of what the Privacy Policy stated.

Second, Plaintiff alleges that she engaged with the Website, the pages of which routinely tout and discuss the medical nature and medical benefits of Defendants' services, and booked services. ¶¶ 19-20, 31-41, 99. Indeed, her decision to input sensitive data into the Website was a direct result of Defendants' failure to disclose that this data was being intercepted by Meta, Google, and TikTok. Defendants cannot use their own failure to provide a clear and conspicuous disclosure as a shield against liability. *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 573 (The UTPCPL is a

remedial statute and must be construed broadly to "eradicate unscrupulous business practices.") (citation omitted).

Plaintiff has adequately pleaded that she relied on the deceptive appearance of a purported secure, confidential platform to her detriment. Whether that reliance was 'justifiable' is a question of fact and cannot be the basis for dismissal at the pleading stage.

### 3. Plaintiff's Common Law Claims Are Sufficiently Pleaded To Survive A Motion To Dismiss

#### *i. Plaintiff Plausibly Alleges Invasion of Privacy*

An invasion of privacy occurs when a defendant commits "(1) an intentional intrusion; (2) upon the seclusion of another that is (3) highly offensive." *Murphy*, 2024 U.S. Dist. LEXIS 177625, *15-17 (denying dismissal of intrusion upon seclusion claim where defendant collected and transmitted IIHI). Defendants' attempt to characterize their conduct as not highly offensive is wholly unpersuasive. To the contrary, the AC plausibly alleges that their conduct is highly offensive because it involves concealed, systemic tracking of health-related appointment/intake activity with identity linkage for marketing use. Specifically, Plaintiff alleges that Defendants enabled hidden tracking that transmitted Private Information including Plaintiff's medical conditions—like her pregnancy—alongside unique identifiers and other sensitive information. FAC ¶ 34. Despite representing that collection was completely anonymous, Defendants, through the Tracking Technologies, transmitted Plaintiff's Private Information to the Information Recipients, who then used unique identifiers to link her activity with her real world identity. After Defendants obtained the Private Information under false pretenses, it was used for targeted advertising, which Plaintiff alleges she observed immediately afterward and which caused her distress. ⁋⁋ 31-41, 61, 87-112.

When a defendant's website displays a statement promising not to collect or share users' personal information, its collection and disclosure of user browsing data can be a "highly offensive" because the statement creates a reasonable expectation of privacy and encourages users to browse the website "by collecting information using duplicitous tactics." *Nickelodeon*, 827 F.3d at 295. Defendants' Privacy Policy explicitly promises users that any information disclosed to third parties via pixels is "completely anonymous." ⁋ 117. Yet Defendants routinely disclose individually identifiable health information and other highly sensitive data linked to specific individuals, including Plaintiff, to the Information Recipients. *Id.* ⁋⁋ 33-41, 96-97, 117, 137. Defendants' reliance on *Cook I* is factually distinguishable because the information transmitted was *not* "personally identifying information" and "[n]othing [] could connect [plaintiff's] browsing activity to her." *Cook I*, 689 F. Supp. 3d at 65-66.[8]

Because Defendants induce users to provide their Private Information under false pretenses, they do not legitimately obtain the information. *Steinberg* is inapposite, as the plaintiffs conceded not only that they voluntarily disclosed their information but also that defendant did not make any misrepresentations on which they justifiably relied regarding the way that consumer information would be handled. *Steinberg v. CVS Caremark Corp.*, 899 F. Supp. 2d 331, 337 (E.D. Pa. 2012). Nor did the court articulate or apply any rule for when information is "legitimately obtained." *Id.* at 342-43. The Third Circuit has concluded that a "key factor" in determining

[8] Defendants' reliance on *Cook I* is further misleading. The quoted language of the opinion is followed by a citation to the *Nickelodeon* decision, which did not hold defendant Google's tracking in that case to be highly offensive, but *did* hold defendant Viacom's use of tracking to be an intrusion upon seclusion because, *like here*, it "encouraged parents to permit their children to browse those websites under false pretenses" while stating it would not collect children's personal information. *Id.* at 72, citing *In re Nickelodeon*, 827 F.3d at 294-95; see also *Cook v. Gamestop* ("*Cook II*"), 148 F.4th 153, 160-62 (3d Cir. 2025) (also distinguishing *Nickelodeon*).

whether a defendant obtained a plaintiff's information with "legal or personal permission" is the "presence or absence of consent." *Nickelodeon*, 827 F.3d at 293 & n.198.

Plaintiff's allegations show that Defendants lacked permission to collect her and other Website users' Private Information. Defendants fail to provide notice of their data collection and disclosure practices because the Privacy Policy falsely promises that any information they disclose to third parties is "completely anonymous." ¶¶ 117-18. Without adequate notice of Defendants' actual practices, users cannot consent. *Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 118-19, 121 (W.D. Pa. 2019); *see* ¶¶ 40-41 (alleging that Plaintiff would not have allowed Defendants to collect her information had she known about their actual practices). At minimum, the Court should not dismiss on this basis without further factual development. *See Popa*, 426 F. Supp. 3d at 121 (declining to dismiss intrusion upon seclusion claim based on consent prong because the issue turned on "the nature and implications of the privacy statement").

*ii. Plaintiff States a Claim for Breach of Confidence*

Plaintiff sufficiently alleges a confidential relationship with Defendants to state a claim for breach of confidence. A confidential relationship exists when one party has "reposed a special confidence in another" such that the parties "do not deal with each other on equal terms," meaning there is an "overmastering dominance on one side, or weakness, dependence or justifiable trust, on the other." *Clemens v. ExecuPharm, Inc.*, 678 F. Supp. 3d 629, 638 (E.D. Pa. 2023) (quoting *In re Clark's Estate*, 359 A.2d 777, 781 (Pa. 1976)). Although *Clemens* articulates the governing standard, its facts are not analogous: *Clemens* involved a traditional data breach in which cybercriminals stole employee information from a corporate database. By contrast, the instant action concerns Defendants' own intentional deployment of pixel tracking tools to capture and transmit patients' sensitive medical information to third parties for marketing and analytics

purposes. The confidential relationship analysis is therefore even more straightforward here, where the alleged disclosures stem not from an external criminal intrusion but from Defendants' voluntary conduct embedded in their patient-facing digital infrastructure. Indeed, a facility's duty to keep patients' medical information confidential "arises out of the confidential nature of the relationship and the personal nature of the information which must be disclosed in the ordinary course of the medical treatment." *Burger v. Blair Med. Assocs., Inc.*, 964 A.2d 374, 380 (Pa. 2009).

Plaintiff expressly alleges that Defendants' duty of confidentiality arises out of the relationship they formed with Plaintiff and other prospective patients as an institution that provides patient care and has access to patient medical information. *See* ¶¶ 6, 9, 12, 31-41, 96, 114, 130, 141, 146, 148, 202, 224. Plaintiff further alleges that Defendants "routinely tout the medical nature of their services"; collect their patients' personal medical information, including their particular health conditions (like Plaintiff's pregnancy) and the types of health treatment sought and/or received; and disclose that Private Information to unauthorized third parties without consent. ¶¶ 19-21, 27, 34, 92. These allegations plausibly state a claim for breach of confidence.

*iii. Negligence Is Sufficiently Pleaded*

Under Pennsylvania law, a negligence claim requires four elements: "(1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages." *Grossman v. Barke*, 868 A.2d 561, 566 (Pa. Super. Ct. 2005) (internal citations omitted). Defendants' primary challenge is that it owed no duty to Plaintiff. MTD at 26-27. Not so.

"Under Pennsylvania law, those who affirmatively collect sensitive information owe a duty to exercise reasonable care to protect against the foreseeable harm of a data breach." *Simona Opris*, 2022 U.S. Dist. LEXIS 94192, *9. Here, unlike in a traditional data breach, Defendants themselves

enabled the disclosure of patient information, but this in no way obviates their duty. As discussed *supra*, Defendants' Privacy Policy promises Users of the Website that "[a]ny information that these third parties collect via cookies and action tags is completely anonymous." ¶ 117. Considering the use of similar technologies, this Court has ruled that "it would be premature to conclude, as a matter of law, that Pennsylvania would not recognize a duty on the facts presented in the [amended complaint]." *Murphy*, 2024 U.S. Dist. LEXIS 177625, *11. In so deciding, this Court relied upon *E.J. v. Tri-County Big Brothers/Big Sisters*, 692 A.2d 582, 584 (Pa. Super. Ct. 1997) which found that "[o]nly when the question of foreseeability is undeniably clear may a court rule as a matter of law that a particular defendant did not have a duty to a particular plaintiff." Considering a prior motion to dismiss, a different judge adjudicating between these parties determined that "accepting [p]laintiffs' allegations as true, they have plausibly claimed that they relied to their detriment upon [defendant's] representations." *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, No. 22-4674, 2023 U.S. Dist. LEXIS 182921, at *11 (E.D. Pa. Oct. 10, 2023).

Beyond the duty created by Defendants' representations in their Privacy Policy, those in the medical field have a duty to "maintain the confidentiality of medical records" *Burger v. Blair Med. Assocs.*, 600 Pa. 194, 204, 964 A.2d 374, 380 (2009). This duty "arises out of the confidential nature of the relationship and the personal nature of the information which must be disclosed in the ordinary course of the medical treatment." *Id.* Such duties exist even when the entity collecting the data is not a medical provider, as employers likewise "owe a duty to [e]mployees to exercise reasonable care in collecting and storing their personal and financial information on [their] computer systems." *Dittman v. UPMC*, 649 Pa. 496, 516, 196 A.3d 1036, 1048 (2018). This duty exists at common law and is independent of whether Defendants is covered by HIPAA.

Defendants argues that Plaintiff cannot bring a negligence claim because Plaintiff alleges elsewhere that Defendants' conduct was intentional. MTD at 28. Such a question involves fact-heavy determinations of Defendants' knowledge, procedures, and goals in implementing the Tracking Technologies premature for this stage of the proceedings.

The disclosure of Plaintiff's private information is itself the primary injury that Plaintiff seeks to remedy. The Third Circuit has long held that "improper dissemination of information can itself constitute a cognizable injury." *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d 625, 638-39 (3d Cir. 2017). Disclosure itself is an injury as "the alleged disclosure of their personal information created a *de facto* injury. Accordingly, all of the [p]laintiffs suffered a cognizable injury, and the Complaint should not have been dismissed under Rule 12(b)(1)." *Id.* at 629. Plaintiff suffered this injury regardless of whether she remains pregnant or not.

Beyond the *de facto* injury of the disclosure of Plaintiff's Private Information, the accompanying injuries alleged by Plaintiff are sufficient. *See, e.g.*, *Roma v. Prospect Med. Holdings, Inc.*, No. 23-3216, 2024 U.S. Dist. LEXIS 138947, at *20 (E.D. Pa. Aug. 5, 2024) (finding that the Third Circuit treats emotional distress and related costs, mitigation efforts, and the disclosure of private information as sufficiently concrete harms). Concomitant with the disclosure of her Private Information, Plaintiff alleges that she and Class Members suffer "increased infiltrations into their privacy through spam and targeted advertising they did not ask for, loss of privacy, loss of confidentiality, embarrassment, emotional distress, humiliation and loss of enjoyment of life." ¶ 204.

Defendants' last-ditch effort to escape liability by questioning causation is equally unavailing. MTD at 29. Plaintiff has shown in great detail how her private information is conveyed, with unique identifiers, to the Information Recipients. ¶¶ 35-39, 106-112. It must be reiterated that

Plaintiff need only state a claim that is "facially plausible" and has satisfied this "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019) (internal citations and quotations omitted). Defendants attempt to convert this motion into a motion for summary judgement by asking the Court to infer that additional factors outside the pleadings could have caused the advertisements that Plaintiff saw. Such a question is premature for this stage of this litigation and asks the Court to go beyond the pleadings.

For all these reasons, this Court should deny Defendants' motion to dismiss as to Plaintiff's negligence claim.

*iv. Plaintiff Has Adequately Pleaded Unjust Enrichment*

A prima facie showing of unjust enrichment under Pennsylvania law requires that a Plaintiff show "benefits conferred on Defendants by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for Defendants to retain the benefit without payment of value." *Lackner v. Glosser*, 892 A.2d 21, 24 (Pa. Super. Ct. 2006).

Here, Plaintiff provided her Private Information to Defendants with the understanding that it would be used solely for her own medical needs. ¶¶ 34-36. Plaintiff has shown that her medical information had significant value and that Defendants benefited from disclosing it. ¶¶ 166-171. Under these circumstances, it would be unjust for Defendants to retain that benefit. *See Murphy*, 2024 U.S. Dist. LEXIS 177625, *19.

Defendants' authorities are inapposite. Unlike in *Steinberg v. CVS Caremark Corp.*, 899 F. Supp. 2d 331, 341 (E.D. Pa. 2012), Plaintiff here has shown a discrete value to her private information, even at the individual level, to the order of several hundred dollars. ¶¶ 166-171.

Internet usage, privacy concerns related thereto, and this area of law have all developed dramatically in the twenty-five years since *In re Doubleclick Privacy Litig.*, 154 F. Supp. 2d 497, 525 (S.D.N.Y. 2001). More recent cases in this developing area of law have found that “federal courts are not uniform in their analyses of unjust enrichment claims in data breach class actions.” *In re Rutter's Data Sec. Breach Litig.*, 511 F. Supp. 3d 514, 538 (M.D. Pa. 2021). In the instant case, Plaintiff’s private information clearly has value, as evidenced by the fact that Defendants shared such information for their own financial benefit. *See* ¶ 232.

Defendants’ analogy to *In re Nickelodeon Consumer Privacy Litig.*, 2014 U.S. Dist. LEXIS 91286 (D.N.J. July 2, 2014), where the Defendants there provided free access to videos and games on its website while collecting users’ information. The information at issue in that case was much less sensitive—basic demographic information like age and gender. More to the point, unlike the Defendants in *Nickelodeon*, Hand and Stone operates its website as a means of acquiring customers for its in-store services. It is disingenuous to analogize the Hand and Stone Website to an online content platform that provides free entertainment, particularly when the court’s reasoning hinges on how it is unreasonable for a consumer not to expect a website providing free videos and games to not monetize consumers’ usage. *Id.* at *70.

Given these facts, it would be untenable for Defendants to retain the full monetary value that they derived from use of the Tracking Technologies, and Plaintiff’s unjust enrichment claim should survive.

Dated: March 2, 2026

Respectfully submitted,

*/s/ Beena M. McDonald*
Steven A. Schwartz (PA Bar ID No. 50579)
Beena M. McDonald (PA Bar ID No. 83315)
Alex M. Kashurba (PA Bar ID No. 319003)
Marissa N. Pembroke (PA Bar ID No. 330494)
**CHIMICLES SCHWARTZ KRINER &**

**DONALDSON-SMITH LLP**
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
sas@chimicles.com
bmm@chimicles.com
amk@chimicles.com
mnp@chimicles.com

**MIGLIACCIO & RATHOD, LLP**
Nicholas A. Migliaccio*
Jason S. Rathod*
Bryan G. Faubus*
Zachary O. Chambers*
Tel: 202.470.3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com
bfaubus@classlawdc.com
zchambers@classlawdc.com
* *pro hac vice anticipated*

*Attorneys for Plaintiff & the Putative Class*

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint was electronically filed with the Court's ECF filing system on March 2, 2026, and served on all counsel of record via the Court's electronic filing system.

*/s/ Beena M. McDonald*
Beena M. McDonald (PA Bar ID No. 83315)