**N THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LAUREN WOLF,<br><br>Plaintiff,<br><br>v.<br><br>HAND and STONE FRANCHISE LLC, et. al.,<br><br>Defendants. | CASE NO. 2:25-CV-05964-JHS<br><br>JUDGE JOEL H. SLOMSKY |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT***

*Hand and Stone previously filed a motion for leave to exceed the page limit for this reply brief (Dkt. 27). Should the Court grant that motion, Hand and Stone has prepared a fifteen-page version and requests leave to file it instanter. Hand and Stone files the present brief in compliance with the Court's standing ten-page requirement.

## TABLE OF CONTENTS


I. PLAINTIFF FAILS TO ALLEGE HIPAA APPLIES OR WAS VIOLATED ..... 1

A. Plaintiff Has Not Alleged Provision of Health Care or Covered Transactions. ..... 1

B. Plaintiff Cannot Allege a HIPAA Violation Without an Improper Disclosure. ..... 2

II. PLAINTIFF LACKS STANDING WITHOUT A CONCRETE HARM ..... 3

A. Plaintiff Does Not Allege Disclosure of Sensitive Medical Information ..... 3

B. Lost Benefit of the Bargain, Without More, is Not a Concrete Harm. ..... 3

C. Plaintiff Cites No Authority to Support Her Speculative Future Harms. ..... 4

III. PLAINTIFF HAS NOT SAVED HER CLAIMS FROM RULE 12(b)(6) DISMISSAL ..... 5

A. Plaintiff Has Not Saved Her ECPA Claim. ..... 5

1. The Tracking Technologies do not create an actionable interception. 5

2. Plaintiff cannot overcome the ECPA's one-party consent rule. ..... 5

B. Plaintiff's UTPCPL Claim Fails. ..... 7

1. Plaintiff does not plausibly allege actual loss. ..... 7

2. Plaintiff does not plausibly allege reliance. ..... 8

C. Plaintiff Again Stretches the FAC Too Far in Arguing for Her Privacy Claims. ..... 8

1. Plaintiff does not allege a highly offensive intrusion. ..... 9

2. Hand and Stone is not a medical provider and owes no confidence. ... 9

D. Plaintiff Has Failed to Save Her Negligence and Unjust Enrichment Claims. ..... 9

1. Plaintiff's negligence cases do not identify an applicable duty. ..... 10

2. *Murphy* does not save Plaintiff's unjust enrichment claim. ..... 10

IV. CONCLUSION ..... 10

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Al-Asadi v. City of Phoenix*,
No. 09-cv-47, 2010 WL 716410 (D. Ariz. Feb. 24, 2010) ....................1

*American Hosp. Assoc. v. Becerra*,
738 F.Supp.3d 780 (N.D. Tex. 2024) ....................2

*Brown v. Learfield Commc'ns, LLC*,
No. 23-cv-00374, 2024 WL 3676709 (W.D. Tex. June 27, 2024) ....................6

*Burger v. Blair Med. Assocs., Inc.*,
964 A.2d 374 (Pa. 2009) ....................10

*Cole v. Quest Diagnostics, Inc.*,
No. 25-1449, 2025 WL 3172640 (3d Cir. Nov. 13, 2025) ....................5

*DeSimone v. U.S. Claims Servs., Inc.*,
No. 19-cv-6150, 2020 WL 2556949 (E.D. Pa. May 20, 2020), *aff'd,* 858 F. App'x 492 (3d Cir. 2021) ....................8

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ....................5, 6, 7

*Gregg v. Ameriprise Fin., Inc.*,
664 Pa. 567 (2021) ....................8

*Gruenke v. Seip*,
225 F.3d 290 (3d Cir. 2000) ....................4

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*,
903 F.3d 278 (3d Cir. 2018) ....................3, 4

*Kamal v. J. Crew Grp., Inc.*,
416 F. Supp. 3d 357 (D.N.J. 2019) *aff'd*, 918 F.3d 102 (3d Cir. 2019) ....................4

*Kirch v. Embarq Mgmt. Co.*,
702 F.3d 1245 (10th Cir. 2012) ....................6

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) ....................2

*Moore v. Angie's List, Inc.*,
118 F. Supp. 3d 802 (E.D. Pa. 2015) ....................8

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
No. 22-cv-4674, 2023 WL 7017734 (E.D. Pa. Oct. 10, 2023) ....................10

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
No. CV 22-4674, 2024 WL 4350328 (E.D. Pa. Sept. 30, 2024) ....................9, 10

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016)....................5, 9

*Okash v. Essentia Health*,
No. 23-cv-482, 2024 WL 1285779 (D. Minn. March 26, 2024) ....................6, 7

*Opris v. Sincera Reprod. Med.*,
No. CV 21-3072, 2022 WL 1639417 (E.D. Pa. May 24, 2022) ....................7, 8, 10

*In re Rutter's Data Sec. Breach Litig.*,
511 F. Supp. 3d 514 (M.D. Pa. 2021)....................8

*Solarchick ex rel. Solarchick v. Metro. Life Ins. Co.*,
430 F. Supp. 2d 511 (W.D. Pa. 2006)....................3

*Tschoe v. Monarch Recovery Mgmt.*,
No. 20-cv-7331, 2024 WL 2814270 (S.D.N.Y. May 31, 2024) ....................4

*Williams v. TMC Health*,
No. 23-cv-00434, 2024 WL 4364150 (D. Ariz. Sept. 30, 2024) ....................5

**Statutes**

18 U.S.C. §§ 2511(c) and (d)....................5, 6

## I. PLAINTIFF FAILS TO ALLEGE HIPAA APPLIES OR WAS VIOLATED

### A. Plaintiff Has Not Alleged Provision of Health Care or Covered Transactions.

To be a "covered entity" subject to HIPAA,[1] Plaintiff must allege that Hand and Stone *both* provides health care in the normal course of business *and* engages in covered transactions. *See, e.g.*, *Al-Asadi v. City of Phoenix*, No. 09-cv-47, 2010 WL 716410, at *2 (D. Ariz. Feb. 24, 2010).

Hand and Stone's services cannot be transformed into health care by merely emphasizing the word "therapeutic" in the definition of "health care" under HIPAA. (Opp., p. 13). This approach ignores the crux of Hand and Stone's argument: Plaintiff has not alleged facts to show that Hand and Stone's services, when considered in context, are health care, *despite* its exceedingly broad definition. (Mot. pp. 12-14 (collecting authority).) Offering a service that might be described as "therapeutic" does not make a spa a health care provider subject to HIPAA just as a grocery store does not subject itself to HIPAA by selling "therapeutic" skin cream. (*See id.* (citing cases using similar examples).) This is particularly true when Plaintiff offers no explanation as to how any at-issue service(s) she supposedly obtained from Hand are Stone were therapeutic.

Plaintiff also does not dispute that even if an entity provides health care, it is still not subject to HIPAA unless it *also* transmits health information in connection with a covered transaction. (*See* Mot., pp. 14-15.) Instead, she claims that Hand and Stone is asking "the Court to consider matters outside" the FAC. (Opp. p. 14.) She is wrong. Plaintiff bears the burden to plausibly allege that Hand and Stone engages in covered transactions, for example, by alleging that it transmitted her information to a health care plan or insurer for payment. (*See* Mot. p. 7-8.) The FAC contains no such allegations. The only four paragraphs of the FAC that Plaintiff points to, (Opp. p. 14, citing FAC, ¶¶ 2, 11, 20, and 32), have nothing to do with whether Hand and Stone engages in

[1] Defined terms have the same meaning as set forth in Hand and Stone's Motion to Dismiss. (*See* Dkt. 15-1.)

covered transactions. Absent sufficient allegations, Plaintiff's labeling of Hand and Stone as a "covered entity" is an unsupported legal conclusion and not entitled to deference on a motion to dismiss. (*See* Mot., p. 7-8 (discussing cases).) Accordingly, the Court should find that Plaintiff has failed to allege facts sufficient to conclude that Hand and Stone is subject to HIPAA.

**B. Plaintiff Cannot Allege a HIPAA Violation Without an Improper Disclosure.**

Pivoting from her previously broad approach to IIHI/PHI (*see*, *e.g.,* Compl. ¶¶ 7, 17, 19, 34, 38), Plaintiff now focuses more narrowly on the combination of information about her pregnancy and her Facebook ID. (Opp., pp. 15-17). Still, she makes critical missteps.

Plaintiff glosses over an allegation missing from the FAC: while she claims to have entered information about her pregnancy on the Website, *she does not allege that it was transmitted to a third party*. (FAC, ¶ 34; *see* Mot., pp. 16-17). Similarly, the Opposition impermissibly asserts for the first time that she booked a pregnancy massage. (Opp., p. 15.) This is a new allegation; the FAC does not identify what service Plaintiff booked and thus, despite alleging that appointment booking data was transmitted, (FAC ¶¶ 106-11; Opp. p. 15), fails to allege that her booking data disclosed specific health information.

*American Hosp. Assoc. v. Becerra*, 738 F.Supp.3d 780 (N.D. Tex. 2024) is also not, as Plaintiff argues, inapposite.[2] *Becerra* reasoned that browsing data cannot be IIHI when it *might* relate to a person's health. Online "searches" regarding medical conditions are too tenuous to definitively relate to an individual's health as the statute requires. Even if Plaintiff's browsing data could permit an inference that she was pregnant, it is still not IIHI, and her cited cases do not rebut this plain-text analysis.

Non-binding guidance and unpled facts are not enough to allege a HIPAA violation.

---

[2] Regardless, the Bulletin's contents "do not have the force and effect of law and are not meant to bind the public in any way." Online Tracking Bulletin, n.5; *see also Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024).

## II. PLAINTIFF LACKS STANDING WITHOUT A CONCRETE HARM

### A. Plaintiff Does Not Allege Disclosure of Sensitive Medical Information

The disclosure of private medical information can be a sufficient harm to confer standing, but Plaintiff has not alleged medical information *was* shared or that any other shared information was sufficiently scandalizing or humiliating. (Mot., p. 20-22; Section I.B, *supra*). This distinguishes *Adair v. Cigna Corp. Servs., LLC*, upon which Plaintiff relies, where tracking allegedly occurred in users' "password-protected member portals" revealing "insureds' medical and insurance information." No. 25-cv-2384, 2026 WL 295744, at *7 (E.D. Pa. Feb. 4, 2026). Here, Plaintiff's allegations that appointment booking information was transmitted does not include an allegation that Hand and Stone told any third party she was pregnant. (Section I.B, *supra*). Rather, the only alleged disclosure is that Plaintiff booked some kind of spa appointment.

### B. Lost Benefit of the Bargain, Without More, is Not a Concrete Harm.

Plaintiff claims a concrete harm exists "in her loss of the benefit of the bargain." (Opp., p. 19). It does not. She relies on *Roma v. Prospect Medical Holdings, Inc.*, which recognized "benefit-of-the-bargain" injuries for claim-specific standing requirements for California Unfair Competition Law claims when plaintiffs "overpaid for a service" that did not comply with industry standards. No. CV 23-3216, 2024 WL 3678984, at *15, *16 (E.D. Pa. Aug. 6, 2024). *Roma* does not address whether a lost benefit of the bargain affords Plaintiff Article III standing here.[3]

Regardless, it is not enough that Plaintiff believed "that Defendants would keep her Private Information confidential." (FAC ¶ 41). Importantly, "a plaintiff does not have Article III standing when she pleads economic injury . . . but fails to allege that the [transaction] provided her with an economic benefit worth less than the economic benefit for which she bargained." *In re Johnson &*

[3] Plaintiff also cannot recover for lost benefit of the bargain, which is a measure of damages only available *in breach of contract claims*. *Solarchick ex rel. Solarchick v. Metro. Life Ins. Co.*, 430 F. Supp. 2d 511 (W.D. Pa. 2006).

*Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 290 (3d Cir. 2018). Only in her Opposition, (p. 19), and not the FAC, does Plaintiff claim to have overpaid for anything—the services she received from Hand and Stone. But she cannot "simply allege that, although [she] purchased [services] at a given price, [she] later wished [she] had not done so." *Id.* at 289. The Court "cannot conclude that [it has] jurisdiction by presuming that [Plaintiff] would pay less for" Hand and Stone's services "when she fails to even plead as much." *Id.*

**C. Plaintiff Cites No Authority to Support Her Speculative Future Harms.**

Plaintiff's claim of mental distress, (FAC, ¶ 41), is a conclusory allegation "not sufficient to demonstrate an injury in fact." *Tschoe v. Monarch Recovery Mgmt.*, No. 20-cv-7331, 2024 WL 2814270, at *4 (S.D.N.Y. May 31, 2024). Her fear "that advertisers were aware" she was pregnant or that her friends or family "might see those advertisements" is not enough. (*Id.*, ¶ 41). She cannot manufacture standing "based on [her] fears of hypothetical future harm that is not certainly impending." *Kamal v. J. Crew Grp., Inc.*, 416 F. Supp. 3d 357, 364 (D.N.J. 2019) *aff'd*, 918 F.3d 102, 116-117 (3d Cir. 2019). Nothing in the FAC suggests that the outcomes Plaintiff fears are remotely likely to occur. These are "conclusory allegations of risk" built on a "highly speculative chain of future events" that are insufficient to confer standing.[4] *Kamal*, 918 F.3d at 116-117.

Hand and Stone's argument that the risk of future harm will be mooted by the conclusion of Plaintiff's pregnancy is not "flawed." (Opp., p. 23). At some point, Plaintiff's pregnancy became, or had already become, noticeable and therefore public knowledge. *See Gruenke v. Seip*, 225 F.3d 290, 303 n.3 (3d Cir. 2000) ("[I]t is at best unclear whether [her] pregnancy was actually 'confidential'; her condition may have been readily observable to the public because of her physical appearance"). Third parties' possession of her browsing data cannot pose a *future* risk of

[4] To infer that these ads resulted from the Website requires further speculation. Plaintiff could have caused them through any number of online activities, but the FAC offers no such assurances.

disclosing "private" information that is likely *presently* a matter of public knowledge.

Plaintiff lacks a concrete and imminent harm and thus lacks standing to bring her claims.

## III. PLAINTIFF HAS NOT SAVED HER CLAIMS FROM RULE 12(b)(6) DISMISSAL

### A. Plaintiff Has Not Saved Her ECPA Claim.[5]

#### 1. The Tracking Technologies do not create an actionable interception.

Plaintiff simply ignores *Cole v. Quest Diagnostics*, *Inc.*, No. 25-1449, 2025 WL 3172640 (3d Cir. Nov. 13, 2025). But *Cole* is the latest in a line of Third Circuit opinions recognizing that tracking technologies cause *separate communications* with *separate parties*, not interceptions. "If users' browsers directly communicate with [Google and online marketing companies] about the webpages they are visiting . . . then there is no need for the defendants to acquire that information from transmissions to which they are not a party." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 140 (3d Cir. 2015) ("*Google Cookie*"); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 274-276 (3d Cir. 2016). *Cole* considered the Facebook Meta Pixel: it causes a user's browser to "sen[d] a separate message to Facebook's servers concurrent with the communications with Quest." *Cole*, 2025 WL 3172640 at *3 (cleaned up). Thus, "Quest did not aid or assist Facebook in eavesdropping on or intercepting such communications." *Id.* Here, the Tracking Technologies caused "the user's browser" to send additional communications "to Google's or Facebook's servers," (FAC, ¶¶ 4, 90), and do not create an actionable interception.

#### 2. Plaintiff cannot overcome the ECPA's one-party consent rule.

Hand and Stone did not fail to address Plaintiff's "alternate bases of liability" under 18 U.S.C. § 2511(c) and (d). (Opp., p. 26.) These subsections both require a predicate interception of an electronic communication "in violation of" the ECPA to state a claim. *Williams v. TMC*

[5] Plaintiff argues that she has adequately pled the "contents" of her communications were intercepted. (Opp., p. 23-26.) Hand and Stone did not raise this issue in its current Motion to Dismiss and therefore does not address it.

*Health*, No. 23-cv-00434, 2024 WL 4364150, *5 (D. Ariz. Sept. 30, 2024) ("Defendant could not have disclosed or used the contents of a communication [in violation of Section 2511(c) and (d)] if there is no violation of subsection (1)(a). This alone dooms Plaintiffs' secondary ECPA claims."). These "alternate bases of liability" fail with the ECPA claim.

Plaintiff also argues that courts "around the country" have held that the crime-tort exception applies when a plaintiff alleges that IIHI was collected in violation of HIPAA. (Opp., pg. 27.) But relying on the Third Circuit's decision in *Google Cookie*, "an overwhelming majority of courts hold[] that the crime-tort exception does not apply to the alleged interception itself." *Brown v. Learfield Commc'ns, LLC*, No. 23-cv-00374, 2024 WL 3676709, *5 (W.D. Tex. June 27, 2024). The interception must be both "for the purpose of a tortious or criminal act," *and* "*independent* of the intentional act of recording." *Google Cookie*, 806 F.3d at 145 (emphasis in original). Accordingly, neither a HIPAA violation nor an invasion of privacy can invoke the crime-tort exception when they occur "through the act of interception itself." [6] *Id.*

In either scenario, the "bad acts" must be "secondary to the acquisition of the communication" and, *by themselves*, be tortious or criminal. *Okash v. Essentia Health*, No. 23-cv-482, 2024 WL 1285779, *4 (D. Minn. March 26, 2024) (granting motion to dismiss ECPA claim predicated on alleged violations of HIPAA), *quoting Google Cookie*, 806 F.3d at 145. Plaintiff now claims such an act occurred when the Information Recipients associated her browsing data with their "preexisting" profiles on her. (Opp., p. 28.) But third-party acts cannot be used as a basis to invoke the crime tort-exception. *See, e.g.*, *Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246

---

[6] Plaintiff also references "other" unspecified laws supposedly violated in the FAC, which she generically describes as "violations[s] of the Constitution … HIPAA, state law, regulatory guidance, industry standards, and consumer expectations of privacy." (Opp., p. 27.) This is so vague that it is meaningless. Plaintiff cannot invoke the crime-tort exception by referencing the entirety of U.S. state and federal law to suggest that an unspecified law was violated.

(10th Cir. 2012) ("This language does not encompass aiders or abettors. The only persons liable are those who engaged in 'that violation.'"). Hand and Stone is not Google.

Plaintiff's contrary California cases "do not analyze that [independence] requirement, or [consider] a more discrete subsequent tortious or illegal act." *See Okash*, 2024 WL 1285779 at *4. Invoking the crime-tort exception for an invasion of privacy simply because the data can be associated with a user ignores the holding of *Google Cookie*—the "bad act" still occurs through the act of interception. While some California courts may not be "persuaded," (Opp., p. 29), *Google Cookie* forecloses Plaintiff's position.

In contrast to Plaintiff's Opposition, the FAC accuses Hand and Stone of using her data for "business" and "marketing" purposes, to serve targeted advertisements. (FAC ¶¶ 27, 97, 119, 161, 214.) While committing a tort and seeking a profit are not "mutually exclusive," (Opp. p. 29), the predominant purpose alleged in the FAC is *not* tortious or criminal, and Plaintiff does not credibly allege *any other purpose*. This is not a "factual question" inappropriate for a motion to dismiss. (*Id.*, p. 28 n.7.) Plaintiff's *allegations* fail to invoke the crime-tort exception.

**B. Plaintiff's UTPCPL Claim Fails.**

**1. Plaintiff does not plausibly allege actual loss.**

Plaintiff's reliance on *Opris v. Sincera Reprod. Med.*, No. CV 21-3072, 2022 WL 1639417 (E.D. Pa. May 24, 2022) is unavailing.[7] (Opp., pp. 30-32.) In *Opris*, a hacker accessed "patient names, driver's license numbers . . . and health insurance information," and posted the stolen data to a ransomware site. *Id.* at *1. The plaintiffs' "lost property value to their PII and PHI" was supported by actual economic loss: fraudulent charges on their credit cards and costs of credit

[7] Also unavailing is her attempt to distinguish *Google Cookie*. (Opp., p. 31.) Both the CFAA and UTPCPL require actual loss, and the Third Circuit was clear that loss of control is not a cognizable loss absent actual costs incurred as a result. *Google Cookie*, 806 F.3d at 148-49. This is the same standard as the UPTCPL. (Mot., p. 30.)

monitoring services. *Id.* at *17, *33. *Opris* does not hold that "loss of control constitutes a diminution of value" as Plaintiff claims. (Opp., p. 30). What "cybercriminals" can do with stolen PHI on the "cyber black market," (FAC ¶¶ 172-80), is not at issue here.

*Dibish v. Ameriprise Fin., Inc.* is also inapplicable because that plaintiff's lost "benefit of the bargain" was real: she purchased a life insurance policy but was charged almost double the advertised premium. 134 A.3d 1079, 1083 (Pa. Super. Ct. 2016). "*Dibish* provides no support for the notion that merely losing the benefit of one's bargain without an identifiable or tangible loss of any kind can sustain a UTPCPL claim." *In re Rutter's Data Sec. Breach Litig.*, 511 F. Supp. 3d 514, 541 n.11 (M.D. Pa. 2021). These cases do not cure Plaintiff's lack of actual loss.

**2. Plaintiff does not plausibly allege reliance.**

Plaintiff seemingly concedes that she cannot claim reliance on a Privacy Policy of which she was unaware. (Mot., p. 31; Opp., p. 32.) Instead, she now argues that the Hand and Stone "failed to clearly and prominently disclose" its data collection practices. (Opp., p. 32).[8] "When allegations underlying a UTPCPL claim involve a defendant's nondisclosure, the omission is actionable only if there is a duty to disclose" *DeSimone v. U.S. Claims Servs., Inc.*, No. 19-cv-6150, 2020 WL 2556949, at *2 (E.D. Pa. May 20, 2020), *aff'd,* 858 F. App'x 492 (3d Cir. 2021). This duty exists "only under narrow circumstances not present here, such as securities fraud, and manufacturing defects." *Moore v. Angie's List, Inc.*, 118 F. Supp. 3d 802, 817 n.8 (E.D. Pa. 2015) (internal citations omitted); *see also In re Rutter's Data Sec. Breach Litig.*, 511 F. Supp. 3d at 544. As Hand and Stone was not required to disclose its data collection practices (although it did in its Privacy Policy), there is no actionable omission on which Plaintiff could rely.

**C. Plaintiff Again Stretches the FAC Too Far in Arguing for Her Privacy Claims.**

---

[8] Plaintiff must still plausibly allege reliance, even if the UTPCPL "must be construed broadly." *Gregg v. Ameriprise Fin., Inc.*, 664 Pa. 567, 582 (2021) (requiring showing of reliance)

**1. Plaintiff does not allege a highly offensive intrusion.**

Plaintiff argues the at-issue disclosures were "highly offensive to a reasonable person" because the Website collects "sensitive data linked to specific individuals" under "false pretenses." (Opp., pp. 33-35.) But Plaintiff claims she never saw the Privacy Policy she now invokes to support this claim. (Opp., pp. 33-35; Mot., p. 31.) Even if she had, the specific allegations of the FAC show that Website data, as collected, is anonymous until third parties de-anonymize it. (Opp., p. 33; FAC, ¶ 117.) "[T]he Information Recipients place third-party cookies in the web browsers of users logged into their services" and "*[t]hese cookies uniquely identify the user* . . . associated with the information." (FAC ¶ 60 (emphasis added).) Still, Plaintiff's cited cases are distinguishable; they involved affirmative representations that *no* information would be disclosed upon which the plaintiffs relied. *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, No. CV 22-4674, 2024 WL 4350328, at *7 (E.D. Pa. Sept. 30, 2024); *In re Nickelodeon*, 827 F.3d at 269. Here, Hand and Stone states in its Privacy Policy that it discloses browsing data, (FAC, ¶ 116), and has not disclosed medical information it promised not to, (*see* Sections I.A, I.B, II.A, *supra*.) This is not a "highly offensive" intrusion sufficient to sustain an intrusion upon seclusion claim.

**2. Hand and Stone is not a medical provider and owes no confidence.**

Plaintiff argues that Hand and Stone is a "medical provider" and inherently had a special relationship with Plaintiff sufficient to sustain her breach of confidence claim. (Opp., pp. 35-36.) As discussed, Plaintiff has alleged that Hand and Stone provides massage and spa services, not health care. (*See* Section I.A, *supra*; FAC, ¶ 34; Mot. pp. 12-15). That Hand and Stone might inquire about customers' medical history or take other steps in order to safely provide its services does not make it a medical provider. (Mot., pp. 12-13.) As such, there is no special relationship sufficient to sustain Plaintiff's breach of confidence claim.

**D. Plaintiff Has Failed to Save Her Negligence and Unjust Enrichment Claims.**

**1. Plaintiff's negligence cases do not identify an applicable duty.**

The cases Plaintiff cites in support of her negligence claim, (Opp., pp. 36-37), do not refute established precedent rejecting HIPAA-based duties. (Mot., p. 34 (collecting cases).) As such, no factual question of whether foreseeability is "undeniably clear" is implicated here. (Opp., p. 27 (quoting *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, No. 22-cv-4674, 2023 WL 7017734, at * 5 (E.D. Pa. Oct. 10, 2023) ("*Murphy II*").) Still, these cases are distinguishable.

In *Opris*, this Court acknowledged that "HIPAA and its implementing regulations cannot be relied upon to establish a duty of care." *Opris*, 2022 WL 1639417 at *9. In *Burger*, the Supreme Court of Pennsylvania briefly referenced a duty "to maintain the confidentiality of medical records" in breach of physician-patient confidentiality claims; "a distinct cause of action." *Burger v. Blair Med. Assocs., Inc.*, 964 A.2d 374, 375, 201 (Pa. 2009). The *Murphy II* court hesitated to find no duty when the plaintiffs "plausibly claimed that they relied to their detriment" on representations in the defendant hospital's privacy policy, which Plaintiff does not credibly allege here. 2023 WL 7017734 at *5. None of these cases saves Plaintiff's negligence claim.[9]

**2. *Murphy* does not save Plaintiff's unjust enrichment claim.**

Plaintiff relies on *Murphy* to support her unjust enrichment claim. (Opp., p. 39). But her information is not of the sort contemplated by *Murphy*. (*See* Sections II.B, III.B.1, *supra*); *Murphy*, 2024 WL 4350328, at *7 (considering disclosure of, effectively, hospital patients' entire medical records). Even if Plaintiff's "targeted ads" resulted from this disclosure, (FAC, ¶ 39), the FAC does not allege the ads were for Hand and Stone's services or otherwise benefitted Hand and Stone.

## IV. CONCLUSION

For the foregoing reasons, Hand & Stone's Motion to Dismiss should be granted.

[9] This claim also fails on actual loss. (Opp. p., 38). Plaintiff does not plead "costs relating to credit monitoring, [or] identity theft protection," or any other loss. *Roma*, 2024 WL 3678984 at *9; (Sections II.B, II.C, and III.B.1, *supra*.)

Dated: March 23, 2026

Respectfully submitted,

*/s/ Noelle Torrice*________________________

Noelle Torrice (PA Bar ID No. 317928)
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
One Liberty Place
1650 Market Street, 36th Floor
Philadelphia, PA 19103
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
Email: ntorrice@beneschlaw.com

David M. Krueger (*pro hac vice* forthcoming)
David M. Walters (*pro hac vice* forthcoming)
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
127 Public Square, Suite 4900
Cleveland, Ohio 44114
Telephone: 216.363.4500
Facsimile: 216.363.4588
Email: dkrueger@beneschlaw.com
dwalters@beneschlaw.com

Mark S. Eisen (*pro hac vice* forthcoming)
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606-4637
Telephone: 312.212.4949
Facsimile: 412.767.9192
Email: meisen@beneschlaw.com

*Attorneys for Defendants Hand and Stone Franchise LLC and Hand and Stone Franchise Corp.*

**CERTIFICATION OF SERVICE**

The undersigned certifies that the foregoing *Reply in Support of Defendants' Motion to Dismiss Plaintiff's First Amended Class Action Complaint* was electronically filed with the Court's ECF filing system on March 23, 2026, and served by virtue of the same on the following:

Steven A. Schwartz (PA Bar ID No. 50579)
Beena M. McDonald (PA Bar ID No. 83315)
Alex M. Kashurba (PA Bar ID No. 319003)
Marissa N. Pembroke (PA Bar ID No. 330494)
**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**
361 West Lancaster Avenue Haverford,
Pennsylvania 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
sas@chimicles.com
bmm@chimicles.com
amk@chimicles.com
mnp@chimicles.com

Nicholas A. Migliaccio*
Jason S. Rathod*
Bryan G. Faubus*
Zachary O. Chambers*
**MIGLIACCIO & RATHOD, LLP**
412 H Street NE, Suite 302
Washington, D.C. 20002
Telephone: 202.470.3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com
bfaubus@classlawdc.com
zchambers@classlawdc.com
* *pro hac vice anticipated*

*Attorneys for Plaintiff & the Putative Class*

*/s/ Noelle B. Torrice*
Noelle B. Torrice
*One of the Attorneys for Defendants*